CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAR 22 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DEMOND L. JONES, ) | Civil Action No. 7:16-cv-00559 |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: Jackson L. Kiser |
| DANIEL STIDHAM, et al., ) | Senior United States District Judge |
| Defendants. ) | |

Demond L. Jones, a Virginia inmate proceeding pro se, filed a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff names as defendants Leslie J. Fleming, who is the Warden of Wallens Ridge State Prison ("WRSP"), and two correctional officers ("C/Os"). Defendants filed a motion for summary judgment, to which Plaintiff responded, making this matter ripe for disposition. After reviewing the record, I grant in part and deny in part the motion for summary judgment.

I.

A.

On the morning of November 27, 2015, C/O Stidham searched Plaintiff's cell and discarded legal papers. When Plaintiff protested, C/O Stidham responded: "Write that up," and "This is just the beginning." A few hours later, defendant C/O Crusenberry and another officer escorted Plaintiff back to his cell after a shower. Plaintiff complied with standard procedure and kneeled down inside his cell to have his leg restraints removed. Defendant C/O Crusenberry followed him into the cell, stood in a position that blocked the surveillance camera's view, and choked Plaintiff.

After C/O Crusenberry's attack, Plaintiff informed C/O Crusenberry that he would be filing an informal complaint. When Plaintiff placed his hands in the tray slot to have the

handcuffs removed, C/O Crusenberry taunted Plaintiff, stating that Plaintiff would "not be able to write anything with a broken [wrist]." C/O Crusenberry aggressively pulled the handcuff tether, forcing Plaintiff's arms out of the tray slot and causing Plaintiff's wrist to swell and lacerating his left forearm.

Furthermore, C/Os Stidham and Crusenberry improperly denied Plaintiff ten meals between November 27, 2015 and December 2, 2015. Specifically, C/O Stidham personally denied Plaintiff two meals: lunch on November 27 and breakfast on December 2; and C/O Crusenberry personally denied Plaintiff "meals" on November 28 and lunch on December 2. C/Os Stidham and Crusenberry also instructed other A-Break[1] officers to withhold meals on November 28 and 29. Meanwhile, B-Break staff fed Plaintiff on November 30 and December 1.

**B.**

The Defendants offer a different version of events. C/O Stidham did not search Plaintiff's cell on the morning of November 27, 2015, and if he did, he did not discard any legal materials. Later that day, as C/O Crusenberry escorted Plaintiff back to his cell, Plaintiff became verbally disruptive. C/O Crusenberry asked Plaintiff why he was upset, since C/O Crusenberry had just started his shift. Plaintiff responded with a further threat. When they arrived at Plaintiff's cell, Plaintiff kneeled to have his leg irons removed. C/O Crusenberry closed the cell door, removed the leg restraints, and ordered Plaintiff to stand up and place his hands out of the tray slot so that his handcuffs could be removed. Plaintiff refused to comply and attempted to run to the back of his cell, stating, "I told you motherfuckers you are going to have to come in and get them and when you do, I'm fucking one of you all up."

C/O Crusenberry maintained control of the handcuff tether and pulled Plaintiff back toward the tray slot. Plaintiff attempted to sit down, but the C/O Crusenberry and a fellow

---

[1] C/Os Stidham and Crusenberry worked in the A-Break unit.

officer grabbed Plaintiff's wrists to restrain him. After securing Plaintiff's hands out of the tray slot, C/O Crusenberry managed to remove the handcuffs. C/O Crusenberry received an abrasion to his left forearm, and Plaintiff sustained an abrasion (six centimeters by two centimeters) and a cut (.5 centimeters by 2.5 centimeters by .5 centimeters) to his left forearm. C/O Crusenberry got immediate medical treatment for Plaintiff from a nurse who was already in the area. Black-and-white medical photos show an abrasion on C/O Crusenberry's arm and abrasions, a cut, and bleeding on Plaintiff's left forearm.

On November 27 and December 2, C/O Stidham distributed meals in Plaintiff's cell block. On both days, Plaintiff purposefully refused to back away from the tray slot. Per policy, C/O Stidham wrote Plaintiff disciplinary charges for refusing to obey an order, and he did not give Plaintiff a meal. The Defendants assert that neither C/O Stidham nor C/O Crusenberry denied Plaintiff any other meals from November 27 to December 2, 2015, but acknowledge that another officer denied Plaintiff a meal on the morning of November 28, 2015, when Plaintiff once again refused to back away from the tray slot.

## II.

Plaintiff presents five claims:[2]

1. C/O Stidham retaliated by searching Plaintiff's cell, removing and destroying Plaintiff's legal materials, and threatening Plaintiff on November 27, 2015;

2. C/Os Stidham and Crusenberry retaliated by denying Plaintiff meals;

3. C/Os Stidham and Crusenberry were deliberately indifferent to a risk of serious bodily harm by denying Plaintiff meals;

---

[2] Plaintiff did not number the claims in the complaint, but the court construes his pro se pleading liberally. See, e.g., Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002).

3

4. C/O Crusenberry used excessive force while removing Plaintiff's handcuffs on November 27, 2015; and,

5. Warden Fleming was deliberately indifferent to the misconduct of C/Os Stidham and Crusenberry because Warden Fleming failed to schedule a meeting with Plaintiff and failed to intervene after Plaintiff complained about the officers' misconduct.

## III.

### A.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." Id. at 250. In considering a motion for summary judgment, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The nonmoving party cannot defeat a properly supported motion for

4

summary judgment with mere conjecture and speculation. Glover v. Oppleman, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." Id. (quoting Celotex, 477 U.S. at 317).

**B.**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a defendant asserts the affirmative defense of qualified immunity, the court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right[,]" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. at 232 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). In determining whether the law was clearly established, the court "'ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose.'" Lefemine v. Wideman, 672 F.3d 292, 298 (4th Cir. 2012) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 251 (1999)), vacated on other grounds, 568 U.S. 1 (2012).

The onus is on a defendant asserting qualified immunity to put forth authorities and argument showing that he is entitled to it. Meyers v. Baltimore Cty., Md., 713 F.3d 723, 731 (4th Cir. 2013).

5

# IV.

## A.

In Claims 1 and 2, Plaintiff argues that C/Os Stidham and Crusenberry retaliated against him because he filed an informal complaint against another officer. To establish a retaliation claim, a plaintiff must allege: (1) that he engaged in constitutionally protected conduct, (2) he suffered an adverse action, and (3) that a causal link exists between the protected conduct and the adverse action. A Soc'y Without a Name v. Virginia, 655 F.3d 342, 350 (4th Cir. 2011). An inmate must present more than "naked allegations of reprisal." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

For the second element, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [the protected] rights." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005) (internal quotation marks and citations omitted). This objective inquiry examines the specific facts of each case, taking into account the actors involved and their relationship. Balt. Sun Co. v. Ehrlich, 437 F.3d 410, 416 (4th Cir. 2006). Because "conduct that tends to chill the exercise of constitutional rights might not itself deprive such rights, . . . a plaintiff need not actually be deprived of [his] First Amendment rights in order to establish . . . retaliation." Constantine, 411 F.3d at 500. Nonetheless, "the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill [constitutional] activity." Id.

Meanwhile, the test for causation requires an inmate to show that, but for the exercise of the protected right, the alleged retaliatory act would not have occurred. Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998). An inmate experiencing an adverse action shortly after a

6

correctional officer learns that the prisoner engaged in a protected activity may create an inference of causation, but only if "the temporal proximity [is] very close." Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). "The Fourth Circuit has not set forth a specific timeframe for what constitutes 'very close.'" Bowling v. Humanim, Inc., No. JKB-16-3298, 2017 WL 713862, at *3, 2017 U.S. Dist. LEXIS 25176, at *8-9 (D. Md. Feb. 22, 2017) (quoting Bowman v. Balt. City Bd. of Sch. Comm'rs, 173 F. Supp. 3d 242, 250 (D. Md. 2016)). Nevertheless, even if the temporal proximity is insufficient to create an inference of causation, "courts may look to [events that might have occurred during] the intervening period for other evidence of retaliatory animus." Lettieri v. Equant, Inc., 478 F.3d 640, 650 (4th Cir. 2007).

In Claim 1, Plaintiff alleges that C/O Stidham searched Plaintiff's cell in retaliation for Plaintiff's informal complaint against C/O Woodard, another correctional officer. Defendants assert that Plaintiff has not identified the constitutionally protected conduct that the officers retaliated against, and alternatively, that the officers are entitled to qualified immunity. "[A]lthough inmates do not have a constitutional entitlement to and/or due process interest in accessing a grievance procedure, they have a First Amendment right to be free from retaliation when they do file." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 542 (4th Cir. 2017). Further, C/O Stidham's actions are not protected by qualified immunity because the Fourth Circuit has held that such a right had been clearly established before November 27, 2015. Id. at 545. Plaintiff filed a complaint against C/O Woodard, and he had a First Amendment right to be free from retaliation when he filed it

Second, Plaintiff alleges that he suffered an adverse action from C/O Stidham's conduct. According to the complaint, C/O Stidham discarded legal papers related to the Woodard complaint and threatened Plaintiff by stating that he could make Plaintiff's stay "very miserable"

7

and that the search was "just the beginning." C/O Stidham also mockingly ordered Plaintiff to "write that up." Taking Plaintiff's allegations as true, I conclude that Plaintiff has produced sufficient evidence that C/O Stidham's conduct would likely tend to chill a reasonable person's exercise of First Amendment rights.

Third, Plaintiff proffers sufficient evidence to establish a prima facie case that C/O Stidham searched his cell because of the complaint against C/O Woodard. That is C/O Stidham was aware of Plaintiff's complaint against C/O Woodard, C/O Stidham's actions occurred less than a month after the Woodard complaint, C/O Stidham seized legal materials related to the Woodard complaint, and C/O Stidham mocked and threatened Plaintiff by requesting that Plaintiff write him up, as Plaintiff did to C/O Woodard. Drawing all disputed facts and reasonable inferences in favor of Plaintiff, I conclude that Plaintiff presents a genuine dispute of material facts as to the retaliation claim against C/O Stidham.

In Claim 2, Plaintiff states that C/Os Stidham and Crusenberry denied Plaintiff meals in retaliation for Plaintiff's informal complaint against C/O Woodard. For the first factor, Plaintiff had a constitutional right to not be retaliated against for filing an informal complaint and C/Os Stidham and Crusenberry are not entitled to qualified immunity. See Booker, 855 F.3d at 542. Second, Plaintiff alleges that he suffered an adverse action. According to the complaint, C/Os Stidham and Crusenberry caused Plaintiff to be denied up to ten meals in six days. Taking Plaintiff's allegations as true, I conclude that officers repeatedly withholding meals would likely tend to chill a reasonable person's exercise of First Amendment rights. Lastly, Plaintiff proffers sufficient evidence to establish a causal connection that C/O's Stidham and Crusenberry retaliated against him.

Plaintiff asserts that C/Os Stidham and Crusenberry were aware of Plaintiff's complaint against C/O Woodard, the officers' actions occurred less than a month after the Woodard complaint, the officers had no legitimate reason to deny Plaintiff any meals, the officers sought to both punish Plaintiff and undermine his credibility by denying meals based on fabricated charges of disobedience, the officers enlisted coworkers to deny Plaintiff meals when they were off-duty, and, when denying Plaintiff meals, C/Os Stidham and Crusenberry looked into Plaintiff's cell and laughed while pushing the food cart away.

Drawing all disputed facts and reasonable inferences in favor of the Plaintiff, I conclude that Plaintiff presents a genuine dispute of material facts as to the retaliation claim against C/Os Stidham and Crusenberry. Therefore, I deny the motion for summary judgment as to the retaliation claims.

**B.**

In Claim 3, Plaintiff argues that C/Os Stidham and Crusenberry violated the Eighth Amendment's Cruel and Unusual Punishments Clause by denying him meals. "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)). For the first prong, a plaintiff must demonstrate that the deprivation of the basic human need was objectively "sufficiently serious," while the second prong requires a showing that subjectively "the officials act[ed] with a sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

"Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. In order to demonstrate such an

extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal citations and quotation marks omitted). For the second prong, "deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omission for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Thus, deliberate indifference "requires that a prison official know of and disregard the objectively serious medical condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995).

Prisoners have a fundamental right to receive adequate food, and "[a]llegations of inadequate prison food service may be sufficient to state a cognizable claim under § 1983, as long as the deprivation is serious." Blount v. Miller, No. 7:14-cv-000007, 2015 WL 1505772, at *7, 2015 U.S. Dist. LEXIS 42941, at *19 (W.D. Va. Mar. 31, 2015). The constitutional inquiry is whether depriving a cooperative inmate of meals offends "the precepts of humanity and personal dignity so as to violate contemporary standards of decency and constitute a harm [] sufficiently deleterious to satisfy the objective component of an Eighth Amendment claim." Id. 2015 WL 1505772, at *4, 2015 U.S. Dist. LEXIS 42941, at *17-18 (internal citations and quotation marks omitted).

In general, the denial of a few meals, by itself, does not violate the Cruel and Unusual Punishments Clause. See, e.g., Islam v. Jackson, 782 F. Supp. 1111, 1114 (E.D. Va. 1992) (holding that an isolated incident of an officer withholding a single meal from an inmate did not state cognizable claim). Further, an inmate cannot "manufacture" an Eighth Amendment claim when meals are withheld for legitimate rules infractions. Rodriguez v. Briley, 403 F.3d 952, 953 (7th Cir. 2005) (concluding that meal denials deriving from an inmate's refusal to follow valid

prison rules did not violate the Eighth Amendment); Talib v. Gilley, 138 F.3d 211, 213 (5th Cir. 1998) (same). However, "[t]he sustained deprivation of food can be cruel and unusual punishment when it results in pain without any penological purpose." Foster v. Runnels, 554 F.3d 807, 814 (9th Cir. 2009) (finding that officers denying an inmate sixteen meals in twenty-three days was sufficiently serious as to support an Eighth Amendment claim); see also Blount, 2015 WL 1505772, at *7; 2015 U.S. Dist. LEXIS 42941, at *19 (concluding that a reasonable jury could find that the denial of six consecutive meals violated the Eighth Amendment).

Defendants assert that Plaintiff's claim fails for three reasons: C/O Stidham only denied Plaintiff two meal trays,[3] Plaintiff had access to other food, and Plaintiff has not demonstrated that he suffered, or was likely to suffer, any serious harm from the denial. Meanwhile, Plaintiff alleges that: (1) he followed procedure, (2) C/Os Stidham and Crusenberry directly and indirectly denied Plaintiff ten out of a possible sixteen meals over a six-day period from November 27 to December 2, 2015; (3) he did not have access to other foods because he was in segregation; and (4) the deprivations caused severe physical and emotional injuries, including: shock, mental agitation, migraine headaches, illness, thoughts of violence, coldness and pain in extremities, hemorrhaging from ineffective circulation, stomach pain, increased pain in his arm and kidney, shakes, chills, and general weakness.[4] Drawing all reasonable inferences from Plaintiff's allegations, I conclude that a reasonable jury could find that the improper denial of ten meals in a six-day period, including eight meals in a row from November 27 to November 29, falls outside contemporary standards of decent treatment for prisoners so as to be a serious deprivation of a basic human need.

---

[3] Defendants claim that C/O Crusenberry never denied Plaintiff a meal but acknowledge that a C/O "Neff" denied Plaintiff breakfast on November 28 for failing to comply with feeding procedures.

[4] It is duly noted that despite Plaintiff's extensive list of significant injuries, Plaintiff has not shown that he sought or received medical care related to the alleged meal denials.

11

Furthermore, "[t]he risk that an inmate might suffer harm as a result of the repeated denial of meals is obvious," and "[t]here is no question that an inmate's Eighth Amendment right to adequate food is clearly established." Foster, 554 F.3d at 814-15. Therefore, C/Os Stidham and Crusenberry are not entitled to qualified immunity, and, on the basis of Plaintiff's allegations, a jury could infer that C/Os Stidham and Crusenberry deliberately disregarded Plaintiff's need for adequate nutrition. Accordingly, I find that Plaintiff demonstrates a genuine dispute of material fact, and I will deny Defendants' motion for summary judgment as to Claim 3.

## C.

In Claim 4, Plaintiff asserts that C/O Crusenberry used excessive force on November 27, 2015. The Eighth Amendment's prohibition on cruel and unusual punishment forbids the malicious and sadistic infliction of pain on prisoners. Whitley v. Albers, 475 U.S. 312, 319 (1986). To determine "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm," the Supreme Court has established the following factors: (1) the need for application of force, (2) the relationship between the need and the amount of force used, (3) the extent of any inflicted injury, (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and (5) any efforts made to temper the severity of a forceful response. Id. at 321.

"It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id. "The infliction of pain in the course

of a prison security measure, therefore, does not amount to cruel and unusual punishment because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Id. Further, the Eighth Amendment does not require significant injury: "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson v. McMillian, 503 U.S. 1 at 9 (1992).

All of the Whitley factors are in dispute. C/O Crusenberry claims that Plaintiff threatened him, disobeyed orders, and then tried to sit down and/or run to the back of the cell in order to instigate a physical confrontation. C/O Crusenberry also states that Plaintiff's actions could have resulted in serious injury to staff because, if Plaintiff had retreated to the back of his cell with the metal handcuffs, a strike team would have had to enter Plaintiff's cell to restore discipline. Lastly, C/O Crusenberry asserts that he tempered the severity of his response because he used non-lethal methods that did not cause any significant injuries to Plaintiff.

Meanwhile, Plaintiff alleges that force was unnecessary because he was not disruptive and followed C/O Crusenberry's orders. Further, Plaintiff claims that, despite there being no threat to staff and no need for force, C/O Crusenberry intentionally and violently injured Plaintiff's arm, ripping the skin to the bone on the cell door's roughly cut steel. Lastly, Plaintiff argues that C/O Crusenberry did not temper the forcefulness of his response and instead attempted to severely injure him.

The photographs in the record show that Plaintiff sustained an injury from the events involving C/O Crusenberry, a laceration, and bleeding to his left forearm. Regardless of the severity of Plaintiff's injuries, Plaintiff's allegations still implicate the Eighth Amendment because he alleges that the harm was painful and unnecessarily and wantonly inflicted. See id.

13

Drawing all disputed facts and reasonable inferences in favor of the Plaintiff, a genuine dispute of material fact exists as to whether C/O Crusenberry used excessive force. Therefore, I deny the motion for summary judgment as to C/O Crusenberry. See Buonocore v. Harris, 65 F.3d 347, 359 (4th Cir. 1995) (holding that a genuine dispute of material fact precludes summary judgment on whether a defendant is entitled to qualified immunity.).

**D.**

In his fifth claim, Plaintiff generally asserts that Warden Fleming was deliberately indifferent to C/Os Stidham and Crusenberry's unconstitutional actions when the warden refused to meet with Plaintiff and failed to correct his officers' misconduct.

In order to set forth a claim for supervisory liability under § 1983, a plaintiff must show:

> (1) [T]hat the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw, 13 F.3d at 799 (internal quotation marks omitted).

Plaintiff fails to establish supervisory liability because Plaintiff's repeated general declarations of Warden Fleming's negligence cannot support a claim under the Eighth Amendment's Cruel and Unusual Punishments Clause. See Ruefly v. Landon, 825 F.2d 792, 794 (4th Cir. 1987) (holding that mere negligence cannot support a claim for violation of the Cruel and Unusual Punishments Clause). Furthermore, Plaintiff's speculative and conclusory allegations against Warden Fleming do not satisfy the deliberate indifference standard because there is no evidence to support an inference that Warden Fleming had actual or constructive knowledge that C/Os Stidham and Crusenberry posed a pervasive and unreasonable risk of

violating inmates' constitutional rights. Plaintiff has not shown that C/Os Stidham and Crusenberry had any history of misconduct, or that Warden Fleming had relevant prior knowledge that the officers posed a pervasive and unreasonable risk of violating Plaintiff's constitutional rights.

Plaintiff also argues that Warden Fleming failed to properly supervise his subordinates. Warden Fleming cannot be liable merely for the conduct of his subordinates because respondeat superior is not actionable via § 1983. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Accordingly, Warden Fleming is entitled to qualified immunity and summary judgment..

## IV.

Based on the foregoing, Defendant's motion for summary judgment is granted as to Warden Fleming; it is denied as to the claims against C/Os Stidham and Crusenberry.

An appropriate order will be entered.

ENTER: This 22nd day of March, 2018.

_____
Senior United States District Judge